IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

HERCULES HUNTLEY,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         )      CIVIL ACTION NO. 3:10cv810-CSC
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
            Defendant.           )

**MEMORANDUM OPINION**

**I. Introduction**

On June 28, 2007, the plaintiff, Hercules Huntley ("Huntley"), applied for

supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C.

§ 1381 *et seq.*, alleging that he was unable to work because of a disability.  His application

was denied at the initial administrative level.  The plaintiff then requested and received a

hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also

denied the claim.  The Appeals Council rejected a subsequent request for review on July 27,

2010.  The ALJ's decision consequently became the final decision of the Commissioner of

Social Security ("Commissioner").  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986).[1]  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and

1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or  former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction.**  Huntley was born on November 1, 1953. He was nearing 55 years old at the time of the hearing in this case and was 55 at the time of the ALJ's decision in this case. (R. 33, 18, 29). He served in the Navy from 1971 to 1972 and received an honorable medical discharge. (R. 173, 280). Huntley is divorced, homeless, and lives with various family members at various times. (R. 34, 115, 279, 283, 299, 307, 327, 353, 508). Huntley completed school through one year of college (R. 34). His prior work experience includes employment as a house painter and working for surveyors. (R. 37). He ambulates with a cane

due to pain in, and past surgery on, his right ankle.  (R. 41).

Huntley contends that he is unable to work due to pain in his right ankle, pain in his right shoulder due to degenerative osteoarthritis and spondylosis of the cervical spine, gastroesophogeal reflux disease, depression, hepatitis, and the side effects of his prescription medications.  (R. 99, 394, 395).  Following the hearing, the ALJ concluded that Huntley had the following severe impairments: "gastroesophogeal reflux disease; history of Hepatitis C; status post open reduction internal fixation of the right ankle with arthritis; personality disorder, not otherwise specified; and history of cocaine, alcohol, and marijuana abuse (20 CFR 416.921 *et seq.*).   Additionally, the claimant has a non severe impairment of hypertension."   (R. 20).  The ALJ further concluded that Huntley's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 12).   The ALJ determined that Huntley had the residual functional capacity

> to perform medium work as defined in 20 CFR 416.967(c) with the following limitations considerations: he can perform lifting/carrying and pushing/pulling of 25 pounds frequently and 50 pounds occasionally; standing/walking six hours and sitting six hours in an eight-hour day; never climbing ladders/ropes/scaffolds and frequently performing all other postural functions; has no manipulative, visual, or communicative limitations; and he should avoid concentrated exposure to extremes of temperature and hazardous machinery and unprotected heights, consistent with the assessment by the DDS specialist on September 26, 2007.  Additionally, the claimant has moderate limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintaining regular attendance and be punctual within customary tolerances; to interact appropriately with the general public; to get along with coworkers or peers without distracting them

4

or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting; and no significant limitations in other areas of functioning.

The ALJ concluded that Huntley was unable to return to his past relevant work.  (R. 18). The ALJ concluded that Huntely had the residual functional capacity to perform other work in the national economy, and thus, he was not disabled.  (R.28).

**B. Plaintiff's Claims.**  As stated by the plaintiff, the primary issues are as follows:

1.    Whether the ALJ erred by relying on a state agency opinion (Pl's Br. at 5-7);

2.    Whether the ALJ erred by failing to consider Huntley's cervical spondylosis and arthritis and degenerative joint disease in his right shoulder (Pl's Br. at 7);

3.    Whether the ALJ failed to develop the record with regard to impairments of Huntley's right shoulder and cervical spine (Pl's Br. at 7-10);

4.    Whether ALJ the improperly relied on a residual functional capacity determination that did not take into account impairments of Huntley's right shoulder and cervical spine (Pl's Br. at 7-10);

5.    Whether the ALJ erred by mechanically applying the age categories listed in 20 CFR § 416.963.

(Pl's Br. at ).

## IV.  Discussion

### A.    Whether ALJ erred by failing to find that Huntley had severe medical impairments relating to his cervical spondylosis and right shoulder post-traumatic degenerative osteoarthritis.

Huntley contends that the ALJ erred by failing to find that he had severe medical impairments relating to his cervical spondylosis and right shoulder post-traumatic degenerative arthritis.  "[A] 'severe impairment' [is] defined as 'any impairment or

5

combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)). Basic work activities "include ... [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 CFR § 404.1521. An impairment can be considered as "not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). To satisfy the "mild" burden to demonstrate a severe impairment at step two, the claimant "need show only that [his] impairment is not so slight and its effect is not so minimal." *McDaniel*, 800 F.2d at 1031. The step two severity analysis is a threshold inquiry that allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031.

The record includes medical evidence, including objective medical diagnostics, confirming that Huntley suffers from spondylosis and post-traumatic degenerative arthritis of the right shoulder, and that these conditions cause pain in his right shoulder. On March 10, 2008, Tuskegee VMAC nurses noted subjective complaints of shoulder and neck pain, with pain rated as a 7 on a scale of one to ten. (R. 405-06, 469, 479). On the same day, Huntley was seen by a primary care physician for neck and right shoulder pain, and the physician ordered X-rays of Huntley's neck and shoulder. (R. 408-09, 416, 477). On March

11, 2008, cervical spine and shoulder X-rays were performed for complaints of neck and right shoulder pain with a history of falls. (R. 394-95). The X-rays revealed spondylosis of the cervical spine at C4-6 manifested by bone spurs, degenerative arthritis in the right shoulder, and a small calcification in a joint of the right shoulder "which most likely represents a small avulsion fracture secondary to previous trauma." *Id*. Huntley and his ex-wife each reported that, several months prior to May 10, 2008, he had fallen in the shower and cut his right shoulder, requiring stitches. (R. 450, 470).

Huntley returned to Tuskegee VMAC on April 7, 2008, with complaints of right shoulder pain, ankle pain, and headaches. (R. 443-44; 450-51). He reported the pain as being a "9" at most and "6" at the least (on a scale of one to ten) over the last month. (R. 446). At that time, he was taking Tamadol[3] and Lortab[4] for the pain, but the medications were not helping (R. 443-44, 447). He was assessed with arthralgia and degenerative joint disease (R. 444).

On May 21, 2008, Huntley reported to Tuskeegee VMAC for psychiatric treatment;

---

[3]According to the U.S. National Library of Medicine, "Tramadol is used to relieve moderate to moderately severe pain. Tramadol extended-release tablets are only used by people who are expected to need medication to relieve pain around-the-clock for a long time. Tramadol is in a class of medications called opiate agonists. It works by changing the way the body senses pain." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/.

[4]According to the U.S. National Library of Medicine, Lortab is a brand name for a prescription that includes hydrocodone. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/. "Hydrocodone is available only in combination with other ingredients, and different combination products are prescribed for different uses. Some hydrocodone products are used to relieve moderate to severe pain. Other hydrocodone products are used to relieve cough. Hydrocodone is in a class of medications called opiate (narcotic) analgesics and in a class of medications called antitussives. Hydrocodone relieves pain by changing the way the brain and nervous system respond to pain." *Id*.

at that time, he was also suffering from neck and shoulder pain.  (R. 510-11, 516-17, 520-21).

Further, at the administrative hearing, Dr. Calvin Johns, a medical expert called by the ALJ, testified that Huntley "has post ... traumatic degenerative and arthritis [sic] of the right shoulder.  Spondylosis shoulder to the spine.  In that area he's got very little movement of the cervical spine."  (R. 44).

In sum, the record does not contain substantial evidence to support a finding that Huntley's spondylosis or right shoulder post-traumatic degenerative arthritis, alone or in combinations with other impairments, are such slight abnormalities "that [they] would clearly not be expected to interfere with [Huntley's] ability to work, irrespective of age, education or work experience."  *McDaniel*, 800 F.2d at 1031.  Accordingly, the ALJ erred in failing to identify Huntley's cervical spondylosis or right shoulder post-traumatic degenerative arthritis as severe impairments.

**B.**   **Whether the ALJ committed reversible error by failing to develop the record and by failing to account for the functional limitations of Huntley's spondylosis and posttraumatic right shoulder degenerative arthritis.**

"The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."  *Jamison v. Bowen*, 814 F. 2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Social Sec.*, 382 Fed. Appx. 823 (11th Cir. 2010) (panel decision).  Here, consistent with the regulations and applicable law, the ALJ credited Huntley with severe impairments at step two and proceeded

forward with the sequential evaluation.   Thus, if Huntley's neck and right shoulder impairments should have been included as a severe impairment at step two, the omission constitutes reversible error only if the ALJ failed in subsequent steps of his analysis to fully account for functional limitations arising from that impairment.  *See Heatly*, 382 Fed.Appx. 823; *see also Burgin v. Comm'r of Social Sec.*, 420 Fed. Appx.  901, 903 (11th Cir. 2011) (panel decision) ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011) (panel decision) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for reversal.").

Here, the ALJ failed to fully account for the functional limitations of Huntley's condition in steps four and five of the analysis by (1) discrediting Huntley's subjective complaints of pain without articulating explicit and adequate reasons for doing so; (2) failing to consider Huntley's neck- and shoulder- related impairments in determining Huntley's residual functional capacity; and (3)  posing a hypothetical to the vocational expert that did not comprise all of Huntley's impairments, including cervical spondylosis and right shoulder post-traumatic degenerative arthritis.

To establish a disability based on complaints of pain and other subjective conditions, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   *Wilson v. Barnhart*,  284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). As discussed in Part IV A of this opinion, the record contains evidence, including objective medical evidence, that Huntley has underlying medical conditions of cervical spondylosis and posttraumatic degenerative arthritis of the right shoulder, and that these conditions cause pain in Huntley's right shoulder.   (R. 44, 394-95, 405-06, 408-09,  416, 443-44, 446-47, 450-51, 450, 469, 470, 477, 479, 510-11, 516-17, 520-21).  Further, at the administrative hearing, Huntley testified that the pain in his right shoulder and neck interfered with his ability to sleep, limited his ability to reach above his head, and caused him to be unable to lift and carry objects weighing more than 15 or 20 pounds. (R. 35, 37-38, 40-42).

 The ALJ did not state any reason for discrediting Huntley's subjective testimony that his neck and shoulder pain limited his ability to reach above his head or to lift or carry more than 15 or 20 pounds.[5]   However, the ALJ must have discredited Huntley's subjective testimony  because he concluded that Huntley has the residual functional capacity to lift,

---

[5]The court notes that, in discrediting Huntley's complaints of ankle pain, the ALJ mentioned Huntley's failure to complete vocational rehabilitation.  Huntley's failure to complete vocational rehabilitation occurred prior to the onset date of Huntley's spondylosis and posttraumatic right shoulder degenerative arthritis  and therefore does not discredit Huntley's testimony as to the limiting effects of pain resulting from those conditions.

carry, push, and pull 25 pounds frequently and 50 pounds occasionally.  (R. 21).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  *Wilson v. Barnhart*,  284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991).   Therefore, the ALJ erred as a matter of law by discrediting Huntley's testimony regarding the limiting effects of his shoulder pain without articulating explicit and adequate reasons for doing so, in violation of *Wilson*, *supra*.

The ALJ then compounded his error by adopting the functional limitations listed in a functional capacity assessment that was completed by a Department of Disability Services specialist on September 26, 2007,  prior to the 2008 onset of Huntley's right shoulder pain. (R. 21-22, 45,  260, 266).   The limitations listed in the September 2007 functional capacity assessment included the ability to lift and carry no more than 50 pounds occasionally and 25 pounds frequently.  (R. 260).  Incredibly, the ALJ clung blindly to the findings in the DDS specialist's *September 2007* functional capacity assessment *despite all of the following*: (1) the medical records demonstrate that Huntley first complained to the Tuskegee VMAC of neck and shoulder pain in *March 2008*, following a shoulder injury due to a fall only a few months prior (R. 405-406, 450, 469, 470, 479); (2) objective medical evidence from *March 2008*, including shoulder and cervical spine X-Rays, revealed spondylosis of the cervical spine at C4-6 manifested by bone spurs, degenerative arthritis in the right shoulder, and indications of a prior right shoulder fracture (R. 394-95, 408-409, 416, 477); (3) medical records demonstrate that, *after March 2008*, Huntley consistently continued to present with

neck and shoulder pain (R. 443-44; 446-47; 450-51; 510-11; 516-17; 520-21); at the administrative hearing, Dr. Calvin Johns, a medical expert *called by the ALJ*, testified that Huntley "has post traumatic degenerative and arthritis [sic] of the right shoulder. Spondylosis shoulder to the spine. *In that area he's got very little movement of the cervical spine*." (R. 44); and (4) at the hearing, Huntley himself complained that neck and shoulder pain limited his ability to reach above his head or to lift or carry more than 15 or 20 pounds, testimony that the ALJ failed to state any explicit or adequate reason for disbelieving (R. 35, 37-38, 40-42).

The ALJ's residual functional capacity determination  is incorrect as a matter of law because it is based on a functional capacity assessment that was completed prior to the onset of Huntley's neck and shoulder pain; thus, the residual functional capacity assessment could not possibly have taken into account any impairment due to Huntley's cervical spondylosis and degenerative shoulder arthritis. *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware ... when we assess your residual functional capacity."). Further, the ALJ's residual functional capacity determination is not supported by substantial evidence because it inconsistent with the uncontradicted medical evidence and it conflicts with Huntley's subjective statements regarding the limitations of his right shoulder pain on his ability to lift more than 20 pounds – statements which, for present purposes, must be accepted as true. *Wilson*, 284 F.3d at 1225 ("Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that

the testimony be accepted as true.").

Further, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227.  However, in questioning the vocational expert ("VE"), the ALJ compounded his error still further by posing a hypothetical based on the functional limitations of the September 2007 functional capacity assessment, including the ability to lift and carry no more than 50 pounds occasionally and 25 pounds frequently.  (R. 28, 45, 260, 266).  As noted above, the September 2007 functional capacity assessment could not possibly have taken into account all of Huntley's limitations because it was completed prior to the March 2008 onset of Huntley's neck and shoulder impairments.  The VE testified that a person w*ith the limitations indicated in the September 2007 functional capacity assessment* could perform several jobs that existed in significant numbers in the economy such as cleaner/housekeeper, fast food worker, and hand packager.  (R. 28, 45-46).  The ALJ then asked:  "And based on the testimony given by the Claimant and other information in the file that pertains to him could you give me your opinion of whether that person, as he described himself, would be capable of any work?"  (R. 46).  The VE replied: "He would not."  *Id.*  Incredibly, neither the ALJ nor Huntley's attorney asked the VE to explain further. *Id.* ; *see Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981) ("[B]ecause a hearing before an ALJ is not an adversary

proceeding, the ALJ has a basic obligation to develop a full and fair record.").

Substantial evidence does not support the ALJ's determination that Huntley could perform jobs that existed in significant numbers in the national economy because the ALJ relied on the VE's response to a hypothetical that did not include all of Huntley's impairments, *Wilson*, 284 F.3d at 1227, and because the VE's testimony was based on a residual functional capacity determination that conflicts with the medical evidence and with Huntley's subjective statements regarding the limitations of his right shoulder pain on his ability to lift more than 20 pounds – statements which, for present purposes, must be accepted as true. *Wilson*, 284 F.3d at 1225. (R. 28).

For these reasons, the court finds that the ALJ committed reversible error at steps four and five of the sequential analysis by failing to account for the functional limitations of Huntley's cervical spondylosis and posttraumatic right shoulder degenerative arthritis. The case is therefore due to be remanded. Because the court determines that the case is due to be remanded, the court pretermits consideration of Huntley's remaining arguments.

### V. Conclusion

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice

of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

      A separate order will issue.

      Done this 17th day of January, 2012.


                       _____/s/Charles S. Coody_____

                       CHARLES S. COODY
                       UNITED STATES MAGISTRATE JUDGE